**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

EUGENE LONG,

    Petitioner,

v.                                            CASE NO: 8:08-CV-861-T-30MAP

SECRETARY, DEPARTMENT OF
CORRECTIONS, et al.,

    Respondents.
_____/

## **ORDER**

Petitioner, an inmate in the Florida penal system proceeding *pro se*, (hereinafter referred to as "Petitioner" or "Long") brings this petition for writ of habeas corpus pursuant to 28 U.S.C. §2254 (Dkt. #1). The Court has considered the petition, Respondents' response (Dkt. #5) and Petitioner's reply (Dkt. #10). Upon review, the Court determines that the petition must be denied because it fails to meet the requirements of 28 U.S.C. §2254(d) and (e).

### **BACKGROUND**

On August 26, 2004, Long, represented by retained counsel, pled guilty to trafficking in hydrocodone, trafficking in cocaine, and possession of marijuana. He was sentenced the same day to twenty five years in prison with a twenty five year minimum mandatory sentence

on the hydrocodone charge, a three year sentence with a three year minimum mandatory on the cocaine charge, and a three year sentence on the marijuana charge.

Long filed a *pro se* motion to withdraw his plea, which was denied. He appealed his conviction and sentence. His appellate counsel concluded that there was no meritorious basis for the appeal and filed an <u>Anders</u>[1] brief. Long declined his opportunity to file a *pro se* brief in his own behalf, and, on October 19, 2005, the appellate court *per curiam* affirmed without written decision. <u>Long v. State</u>, 914 So.2d 965 (Fla. 2d DCA 2005) (table). Long did not seek certiorari review.

Long filed a *pro se* motion for post-conviction relief on March 15, 2006, pursuant to Florida Rule of Criminal Procedure 3.850. He raised three grounds, the first two of which are the grounds raised in the instant petition before this Court. As to these two grounds, the state post-conviction court denied the first as a matter of law and held an evidentiary hearing on the second. After the hearing, he denied the second ground as well. The final order of denial was entered March 16, 2007. Long appealed and the appellate court *per curiam* affirmed without written decision on March 26, 2008. <u>Long v. State</u>, 979 So.2d 229 (Fla. 2d DCA 2008) (table). The mandate issued April 16, 2008.

---

[1] <u>Anders v. California</u>, 386 U.S. 738 (1967).

Long timely filed the present petition on April 30, 2008. He raised one ground containing two separate arguments which this Court will denominate ground one (A) and one (B):

**Ground One (A):** Ineffective assistance of counsel to investigate and advise Petitioner of defense of medical necessity prior to advising to take a plea.

**Ground One (B):** Ineffective assistance of counsel for failing to investigate and advise Petitioner that he could have argued that he had less than a trafficking amount of pills because the jury may have believed that twenty of the pills were from a previous prescription.

## STANDARD OF REVIEW

**A.  AEDPA**

Since Petitioner's conviction was entered after the enactment of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), his petition is subject to the provisions thereof. When a federal court is asked to review a criminal conviction from state court, 28 U.S.C. § 2254 places a heavy burden upon the petitioner. Habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim resulted in a decision that:

(1) was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or

(2) was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362 (2000); Mitchell v. Esparza, 540 U.S. 12 (2003).

In Mitchell v. Esparza, the Supreme Court explained that a state court's decision is "contrary to" the Supreme Court's clearly established law if it "applies a rule that contradicts the governing law set forth in our cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of this court and nevertheless arrives at a result different from our precedent." Mitchell, citing Williams v. Taylor, 529 U.S. 362, 405-406 (2000).

As to the issue of whether a state court has made "an unreasonable determination of the facts in light of the evidence," the state court's determinations of fact are presumed to be correct and the habeas petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

### B. Ineffective Assistance of Counsel

Where a claim of ineffective assistance of counsel is made, a petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). Deficient performance is performance which is objectively unreasonable under the prevailing professional forms. Id. at 688. Prejudice results when there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. The Eleventh Circuit has held that "[w]hen applying Strickland, we are free to dispose of ineffectiveness claims on either of its two grounds." Oats v. Singletary, 141 F.3d 1018, 1023 (11th Cir. 1998). "To state the obvious: trial lawyers, in every case, could have done

something more or something different. So, omissions are inevitable. But the issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'" Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc) (quoting Burger v. Kemp, 483 U.S. 776 (1987)).

Under Strickland, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." Waters v. Thomas, 46 F.3d 1506, 1511 (11th Cir. 1995) (en banc) (quoting Rogers v. Zant, 13 F.3d 384, 386 (11th Cir. 1994)).

> The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial . . . We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

White v. Singletary, 972 F.2d 1218, 1220-21 (11th Cir. 1992).

## DISCUSSION

**Ground One (A):** Ineffective assistance of counsel to investigate and advise Petitioner of defense of medical necessity prior to advising to take a plea.

Petitioner contends that he had two defenses to the charge of trafficking in hydrocodone, one of which was a medical necessity defense. In support, Petitioner argues:

> The first was a medical necessity defense under Jenks v. State, 582 So.2d 676 (1st DCA 1991). Counsel did not advise Petitioner of this defense, nor did he investigate the defense of Medical Necessity. Counsel did not contact any of the pharmacy's (sic) that Petitioner told him about, nor did he contact any of the Petitioner's doctors, specifically Dr. Garcia. Dr. Garcia would have provided that the Petitioner had a severe degenerative disc disease and disc bugles (sic). That the Petitioner was experiencing severe pain which required

high doses of pain killers. That the Petitioner would have extreme problems in moving, functioning and working without these pain medications. That the Petitioner needed surgery but had no medical insurance. The surgery was very expensive. That the Petitioner would develop a tolerance to the pain medications and it would take more to relieve the pain. Dr. Garcia's testimony would have provided the necessary elements for the medical necessity defense under Jenks and counsel was ineffective in failing to investigate. Dr. Garcia would have been available to testify at trial.

The state post-conviction court denied this claim as a matter of law because it determined that, while it was questionable that the defense was even available in the district in which the court was located, the defense was not available to Petitioner because the facts of his case did not meet the elements of the defense. The availability of this defense is a matter of state law. The ruling of the post-conviction court, and its affirmance, put the matter of state law to rest. Federal courts must accept state courts' rulings on matters of state law. Mullaney v. Wilbur, 421 U.S. 684 (1975). Since the defense was unavailable to Petitioner, his defense counsel could not have performed deficiently by not advising him of it.

Jenks involved highly unusual circumstances:

Kenneth Jenkins inherited hemophilia from his mother, and contracted the acquired immune deficiency syndrome (AIDS) virus from a blood transfusion in 1980. He unknowingly passed it to his wife, Barbara Jenks. Mrs. Jenks' health began to decline rapidly. Her weight dropped from 150 to 112 pounds during a three week period as a result of constant vomiting, and she was hospitalized at least six times for two to three weeks at a time. Although she had been prescribed over a half-dozen oral medications for nausea, none of them worked. When given shots for nausea, she was left in a stupor and unable to function. Likewise, when Mr. Jenks started AZT treatment, he was not able to eat because the medication left him constantly nauseous. He also lost weight, although not as dramatically as his wife.

When the Jenks began participating in a support group sponsored by the Bay County Health Department, a group member told them how marijuana had

Page 6 of 14

helped him. Although initially reluctant, Mr. and Mrs. Jenks tried marijuana and found that they were able to retain their AIDS medications, eat, gain weight, maintain their health, and stay out of the hospital. They asked their treating physician about prescribing the drug, but were unable to obtain a legal prescription. The Jenks decided to grow two marijuana plants to insure its availability, avoid the expense of buying it on the street, and reduce the possibility of arrest.

\* \* \*

Because their physician, Thomas Sunnenberg, was not available to testify, the parties stipulated that Dr. Sunnenberg's testimony would be, in part:

\* \* \*

8. That he has been unable to find any effective drug for treating the defendants' nausea.

9. That the nausea is so debilitating that if it is not controlled, the defendants could die.

10. That if he could legally prescribe Cannabis Sativa as a drug to control their nausea he would.

11. That the only drug that controls their nausea is Cannabis Sativa.

12. That he is presently seeking access to legal Cannabis Sativa through the Food and Drug Administration under the Compassionate Investigational New Drug Program (IND) for the Jenks.

Jenks, 582 So.2d at 677-678.

The Jenks court described the elements necessary to establish a Medical Necessity defense as follows:

1. That the defendant did not initially bring about the circumstance which precipitated the unlawful act;

2. That the defendant could not accomplish the same objective using a less offensive alternative available to the defendant; and

> 3. That the evil sought to be avoided was more heinous than the unlawful act perpetrated to avoid it.

Jenks, 582 So.2d at 679.

In determining that the Medical Necessity defense was a viable defense for Petitioner, the state post-conviction court explained in detail:

> This court notes that there is a lack of precedent from the Second District Court of Appeal, and also notes that there is no recent case law on this issue whatsoever. After thoroughly reviewing *Jenks* and *Sowell*[2], this court finds that they are distinguishable from the case at bar. Both cases involve defendants who cultivated marijuana for their personal use.[3] Here, the illegal substance is hydrocodone, and the Defendant was convicted of trafficking in hydrocodone, not mere possession. Furthermore, in *Jenks*, there was evidence that if the defendants did not use marijuana to ease their nausea, they could die. *See Jenks*, 582 at 678-679. Here, the Defendant alleges only that he needed the hydrocodone so that he would be able to work. *See Defendant's motion, pg. 7a.* Finally, there was evidence in *Jenks* that only marijuana would ease the defendants' nausea. *See Id.* at 679. Here, the Defendant acknowledges that he had a prescription for painkillers from his doctor. It is not unreasonable to assume that the doctor was prescribing the Defendant the appropriate amount of painkillers, so that the Defendant would not have to resort to illegal activities to manage his pain. Additionally, the Defendant alleges that his next doctor appointment was the following Saturday. *See Defendant's motion, pg. 7(a).* It is also not unreasonable to assume that the Defendant could have called his doctor to ask for another prescription when his ran out, rather than illegally obtain painkillers to manage his pain until his next regularly scheduled doctor appointment.
>
> Overall, this court is not convinced that the medical necessity defense even exits (sic) within the province of the Second District Court of Appeal. Even if it does exist, in the absence of controlling authority from the Second District Court of Appeal, the court finds that it must not construe *Jenks* and *Sowell* further than the facts set forth within those cases. As noted above, this court

---

[2] Sowell v. State, 738 So.2d 333 (Fla. 1st DCA 1998) (footnote added).

[3] Even the federal cases cited within Jenks involve defendants convicted of marijuana-related offenses.

finds that each case is distinguishable from the Defendant's case and further finds that the Defendant has failed to establish the three factors set forth in *Jenks*. *See Id*. at 679. Having found that the medical necessity defense was not a viable defense, this court further finds that counsel was not ineffective in failing to investigate this defense. This claim is denied.

Order Denying in Part the Defendant's Motion for Post-Conviction Relief, September 26, 2006, Exhibit 7, p. 60, 62-63.

Since the medical necessity defense was unavailable to Petitioner as a matter of state law, the state post-conviction court did not misapply Strickland v. Washington[4] in finding that Petitioner's trial counsel had not performed deficiently. Therefore, this ground fails.

**Ground One (B):** Ineffective assistance of counsel for failing to investigate and advise Petitioner that he could have argued that he had less than a trafficking amount of pills because the jury may have believed that twenty of the pills were from a previous prescription.

In support of ground one (B), Petitioner argues that: "The second defense was that the jury may have believed that the twenty pills was (sic) from the previous prescriptions he had obtained from Dr. Snyder, and thus would have been (sic) convicted him of a lesser offense than trafficking in more than twenty eight grams." Petition, Dkt. #1, p.7.

The state post-conviction court held an evidentiary hearing on this ground and took testimony from Petitioner's trial counsel, Grady Irvin, Jr., who testified in pertinent part as follows:

Q. And defendant's statement to the police, did he in effect negate any defense with regards to a prescription with what he told the officers?

---

[4] Strickland v. Washington, 466 U.S. 668 (1984).

A. I told – my conversations with him in going over his discovery with him I told him that he admitted that he was a drug dealer and that he was selling hydrocodone and he was selling drugs.

Q. And did that report also indicate that defendant admitted the pills that were found had nothing to do with his prescription?

A. That's correct and when I talked to him about that, he never denied any of it. He said it was true. And he wanted to – as a matter of fact, he told me that it was true, he knew he had gotten caught and he wanted to talk to the State about trying to work for them and I wrote on my folder here, "George Chapman, State Attorney's Office," because he told me he wanted to cooperate and arrange for some transactions.

Q. Did the defendant, at any time, ever want you to fight the case?

A. No, he never wanted me to fight the case. He said that he admitted the case – he admitted it. He wanted to talk – he specifically said you know, "I want to start working for them," is what he said he wanted to do. That was his whole thing. He never wanted to take the case to trial. He wanted to get out in order to be able to do that and I told him that that wasn't going to happen. And he said he wasn't going to go to trial because Judge Downey was his judge and the rumor that – reputation for Judge Downey in the jail was that he would sentence him possibly to consecutive sentences or something and he wasn't going to take the chance. And I specifically recall telling him that there's nothing I like more than a trial, I'd been in trials before Judge Downey before but he did not desire to go to trial. He said, "They got me and I don't want to have these consecutive sentences."

Q. Did you in fact pursue any substantial assistance with George Chapman of the State Attorney's Office?

A. I contacted Mr. Chapman and then there was a contact with the police department to see if there was something and nobody wanted – he wanted out and nobody would do that for him.

Q. Now, how many times did you meet with the defendant to discuss his case?

A. I met with him, I recall specifically, at the pre-trail (sic). I also knew that I met with him – remember listening (sic) him, I would have met with him before his trial date as well and I did. He just didn't want to go to trial. And he – all he told me to do was to, you know, get the best deal that I could for him and I said, "I can't do anything with the 25 year minimum mandatory. I can't do anything." Maybe he can work it off, I didn't know. I said, "Talk to them after you get incarcerated or something."

Q. Had the defendant approached you and told you about this prescription and that some of the pills were in fact included within the prescription, how would you have dealt with that knowing what the police report said?

A. Well, he did tell me about his prescription. He never did not tell me about it. He told me about the prescription; I asked him about the prescription and when was the last time he had gotten a prescription filled and it had been quite some time ago when he had gotten a prescription filled. You know, he just said he had a pill bottle. In short, he wanted to manufacture a defense and I told him I was not going to jeopardize my license or practice by making something up that simply wasn't true. It just didn't add up; the prescription, and the length of time when he got caught, which I believe was November. It just never added up and he specifically told me he had bought the pills and he was reselling the pills. That was his whole thing is that he was selling and he had gotten caught. And I --

Q. And --

A. – when I talked to him about it not adding up, I recall now that that was part of also the motivation of him not wanting to go to trial because I told him I couldn't get around that. There was nothing that I could do.

Q. And in determining how you approach a case and what defenses were viable for a client, do you also determine if you can sell that case, sell that defense to a jury through credible testimony or credible evidence?

A. Correct. I told him if he didn't take – if he wasn't going to take the stand on his own, that he wasn't going to take it on to try to explain why he had so many pills, that I couldn't explain it for him because the prescription just wasn't adding up. There was nothing that I could do

> and that was it. And I said plus, his statements. They were confessions.
>
> Q. So because of the circumstances to that in your mind create a problem with presenting any kind of defense regarding a prescription?
>
> A. Yes it did.
>
> Q. And you told the defendant about that?
>
> A. Of course I did.
>
> Q. And upon having that conversation, the defendant then later decided to change his plea to the case?
>
> A. He wanted to plea and he wanted to work. That's all that he wanted to do. That's what he kept talking. I said, "Well, you got to identify who the person is." I remember him saying something about the person's name or calling him Guy or he was a guy or something like that and I said, "You got to come up with more than that. That's just not simply going to work." And it was, "Get me out of here, get me out of here and then I could – then I can do something."
>
> Q. Did you ever force or pressure or coerce defendant into taking this plea?
>
> A. Absolutely not.

Transcript, Exhibit 7, pp. 143-147.

Based on Mr. Irvin's testimony, the state post-conviction court ruled as follows:

In this claim, the Defendant contends that counsel was ineffective for not pursuing the Defendant's defense that he had a prescription for some of the hydrocodone pills which were found when he was arrested.

At the evidentiary hearing, the Defendant testified that he had a valid prescription for some of the hydrocodone pills and that counsel did not investigate his claim. However, counsel, Grady C. Irvin, Junior, testified that he did consider the Defendant's defense. Counsel explained that one reason he did not pursue that defense was due to the Defendant's admission to law

enforcement that he was a drug dealer and that he was selling hydrocodone and other drugs. In fact, counsel testified that when he specifically asked the Defendant about his statement to police that the hydrocodone seized had nothing to do with his prescription, the Defendant told counsel that it was true.

Moreover, counsel explained that he did not believe that the defense was a viable one because of the substantial period of time that had passed since the Defendant had gotten a prescription filled and the date of his arrest for the pills. Also, counsel stressed the fact that the Defendant specifically stated to him that he had bought the pills and he was reselling the pills. After considering the facts, evidence and the Defendant's statements, counsel believed that the defense was not supported by credible evidence and advised the Defendant accordingly.

Therefore, "in reviewing counsel's performance, the court must be highly deferential to counsel." *Spencer v. State*, 842 So.2d 52, 61 (Fla. 2003). When alleging ineffective assistance of counsel, the defendant must prove both that counsel's performance was deficient and that the defense was prejudiced by this deficiency. *Strickland v. Washington*, 104 S.Ct. 2052 (1984). In order to establish prejudice, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id*. In the event Defendant fails to satisfy one component, the inquiry ends, and the reviewing court need not determine if the defendant satisfied the other. *Maxwell v. Wainwright*, 490 So.2d 927 (Fla. 1986). Here, after considering the testimony, evidence and argument presented at the hearing, this court finds that counsel's actions did not constitute deficient performance and that the Defendant has failed to demonstrate any prejudice as required by *Strickland*. Therefore, the Defendant's claim is denied.

Final Order denying Defendant's Motion for Post-Conviction Relief, March 16, 2007, Exhibit 7, pp. 113-114.

The state post-conviction court made a finding of fact that the performance of Petitioner's trial counsel was not deficient and that Petitioner was not prejudiced. This Court is bound by those findings of fact as long as they are based on a reasonable "determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. §

2254(d)(2). Here, the findings of fact by the state post-conviction court were well supported by the evidence at the hearing. The state post-conviction court properly applied Strickland v. Washington in finding that Petitioner's trial counsel was not deficient and that Petitioner was not prejudiced by his performance. Therefore, this ground fails.

## CONCLUSION

Having concluded that neither ground meets the requirements of 28 U.S.C. § 2254(d)(1)-(2), the Court rules in favor of Respondents. It is therefore

ORDERED AND ADJUDGED that:

1. The petition for writ of habeas corpus (Dkt. #1) is DENIED.

2. The Clerk is directed to enter judgment in favor of Respondents and against the Petitioner, terminate any pending motions, and close this file.

**DONE** and **ORDERED** in Tampa, Florida on June 5, 2009.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies Furnished To**:
Counsel/Parties of Record

*F:\Docs\2008\08-cv-861.deny 2254.wpd*